UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDGAR GUERRERO APODACA,<br><br>      Plaintiff,<br> v.<br><br>EATON CORPORATION,<br><br>      Defendant.<br><br><br>DAVID FITZPATRICK, and RYAN MCDADE,<br><br>      Intervenor-Plaintiffs,<br> v.<br><br>EATON CORPORATION,<br><br>      Intervenor-Defendant | CASE NO. 2:20-cv-01064-TL<br><br>ORDER DENYING MOTIONS TO EXCLUDE |

  This matter is before the Court on the Parties' cross-motions to exclude expert testimony. Plaintiff Edgar Guerrero Apodaca and Intervenor-Plaintiffs David Fitzpatrick and Ryan McDade (collectively, "Plaintiffs") were injured while working on a construction site when a piece of electrical equipment manufactured by Defendant Eaton Corporation ("Eaton") exploded. Dkt. Nos. 21, 25. Plaintiffs' suits raise manufacturing and design defect claims, as well as a failure to warn claim. *Id.* Defendant raises several affirmative defenses, including contributory fault. Dkt. Nos. 22, 28. Defendant moves to exclude the opinions of the Plaintiffs' retained experts, Douglas Barovsky and Paul Way. Dkt. Nos. 51, 53. In turn, Plaintiffs move to exclude opinions of two of Defendant's retained experts, Brian Erga and R. Vasudevan. Dkt. Nos. 55–56, 61–62. Having

ORDER DENYING MOTIONS TO EXCLUDE - 1

considered the Parties' briefing and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court DENIES the Parties' respective motions to exclude.

## I. BACKGROUND[1]

On December 17, 2019, Plaintiffs were injured in an arc flash explosion emanating from a 200 ampere Pow-R-Way III bus plug manufactured by Eaton. At the time, Plaintiffs were all employed by Cochran Inc., the electrical contractor for the construction project where they were all working when the incident occurred. After the incident, but before litigation was initiated, Cochran engaged Douglas Barovsky, a registered professional engineer who specializes in forensic electrical engineering, to investigate the incident. He conducted a site inspection and examined the damaged equipment as compared to an undamaged exemplar provided by Eaton. Based on this limited analysis, Mr. Barovsky produced a preliminary report concluding that a defect in the equipment was more probably than not the cause of the arc flash incident.

After this litigation ensued, each of the Parties retained expert witnesses. Mr. Apodaca retained Mr. Barovsky,[2] while Mr. Fitzpatrick and Mr. McDade retained Paul Way, a registered professional engineer who is a National Fire Protection Association Certified Fire and Explosion Investigator and an International Association of Arson Investigation Certified Fire Investigator. Eaton retained two experts: (1) R. Vasudevan, a registered professional engineer who conducted a forensic engineering analysis; and (2) Brian Erga, an electrical safety expert. All of the retained experts prepared reports that were duly exchanged in discovery. All of the experts were deposed.

---

[1] A more comprehensive statement of facts is included in the Court's Order on Plaintiffs' motion for partial summary judgment filed concurrently with this Order.

[2] Between investigating the incident for Cochran and preparing his expert witness report for Mr. Apodaca, Mr. Barovsky changed employers. This change in employment does not materially impact the Court's analysis and is thus disregarded for purposes of this Order.

Mr. Vasudevan prepared a rebuttal report to Mr. Barovsky's expert report. Mr. Way prepared a rebuttal to the reports of both of Defendant's experts.

## II.  LEGAL STANDARD

"[A] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Before admitting expert testimony into evidence, the district court must perform a gatekeeping role of ensuring that the testimony is both relevant and reliable under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). The issue in these motions focuses on the reliability of the proposed testimony for the various experts. The reliability inquiry "requires that the expert's testimony have a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 1188–89 (internal quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). However, the test "'is not the correctness of the expert's conclusions but the soundness of his methodology,' and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony.'" *Id.* at 1189 (citations omitted). Further, "absolute certainty is not what the law requires, expert opinions [need only] be based on facts which enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Henricksen v. ConocoPhillips Co.*, 605 F.

1  Supp. 2d 1142, 1169–70 (E.D. Wash. 2009) (internal quotations and edits omitted) (quoting

2  *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir.1988)); *see also Daubert*, 509 U.S.

3  at 590 ("it would be unreasonable to conclude that the subject of scientific testimony must be

4  'known' to a certainty."). If an expert's opinion is found to be reliable, "[v]igorous cross-

5  examination, presentation of contrary evidence, and careful instruction on the burden of proof

6  are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*,

7  509 U.S. at 592, 596.

### III.  DISCUSSION

None of the Parties appear to challenge any of the experts' qualifications or the potential relevance of the proffered opinions. Thus, the pending motions turn on the Court's determination of the reliability of the challenged opinions.

**A.     Mr. Erga's Opinions**

Plaintiffs argue that Mr. Erga's opinions lack sufficient factual foundation to be considered reliable under Rule 702. Dkt. No. 55 at 10–12. Specifically, Plaintiffs point to testimony provided by Defendant's Rule 30(b) deponent and the warning instructions printed by Eaton on its equipment, which they allege contradicts the facts upon which Mr. Erga's opinions rest.[3] *Id.* Defendant plausibly explains the alleged conflict between Mr. Erga's opinions and its Rule 30(b)(6) witness's testimony. Dkt. No. 64 at 8–9. In addition, Mr. Erga's opinions appear to go to safety precautions that *could* have been implemented to avoid the incident or the injuries caused by the incident. Dkt. No. 65-3 at 4–5. Although the countervailing factual evidence to which Plaintiffs point might explain why the safety precautions were not implemented at the

---

[3] Plaintiffs cite *Snapp v, United Transportation*, 889 F.3d 1099 (9th Cir. 2018) in both of their motions to exclude. *Snapp* merely addresses the general proposition of whether an entity can defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition, and the Court does not find the case particularly helpful in the Rule 702 analysis.

time of the incident, for the purpose of assessing fault, the countervailing facts do not render Mr. Erga's opinions unreliable as a matter of law. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 592, 596.

**B.     Mr. Vasudevan's Opinions**

Plaintiffs argue that Mr. Vasudevan did not apply a reliable methodology and lacks a sufficient factual foundation for his causation opinions. Dkt. No. 56 at 11–12. Plaintiffs find fault with Mr. Vasudevan's opinions that a defect cannot be conclusively shown to be the cause of the explosion based on the available evidence, partly because a specific piece of physical evidence was not preserved, and because potential alternate causes have not been empirically eliminated. *Id.* at 4; *see also* Dkt. No. 72-1 at 22–23. Plaintiffs attempt to poke holes in some of the facts upon which Mr. Vasudevan relies in forming his opinions. For example, Plaintiffs note that Mr. Vasudevan does not explain why a missing piece of physical evidence was deemed critical in his analysis when other witnesses, including Eaton's 30(b) deponent, have testified that the missing evidence would not provide probative information as to causation. Dkt. No. 79 at 4. Similarly, Plaintiffs call out the circumstantial nature of some of the evidence Mr. Vasudevan highlights in forming his opinions, such as: (1) the fact that similar accidents did not occur with the multiple other bus plugs installed at the same construction site; and (2) the fact that each piece of equipment, including the bus plug in question, underwent rigorous testing prior to shipping from the factory and again while on-site prior to installation. *Id.* Plaintiffs also argue that the fact that other potential causes have not been definitively eliminated is not sufficient foundation to support the conclusion that a defect could not have caused the arc flash explosion. *Id.*

While all of Plaintiffs' arguments certainly challenge the weight a factfinder might give to Mr. Vasudevan's opinions, the Court finds sufficient indicia of reliability in the record to

allow his testimony, including Mr. Vasudevan's background and qualifications (Dkt. No. 72-1 at 25–26), his thorough and comprehensive reports (Dkt. Nos. 72-1 and 72-2), and his cogent defense of his opinions during his deposition (*see, e.g.*, Dkt. No. 73-6).

C.   **Mr. Barovsky's and Mr. Way's Opinions**

Defendant argues that Mr. Baravosky's opinions on causation should be excluded as unreliable because they lack sufficient factual foundation and because he did not employ a reliable methodology.[4] Dkt. No. 51 at 7–10. Eaton further argues that Mr. Way's opinions should be excluded because they mirror Mr. Baravosky's and must therefore be equally unreliable.[5] Dkt. No. 53 at 10–11. Eaton contrasts the investigations Plaintiffs' experts performed with the forensic root-cause analysis its expert, Mr. Vasudevan, attempted to perform.[6] Dkt. No. 80 at 6. Specifically, Eaton claims that the only way Mr. Barovsky's or Mr. Way's opinions can be found to be reliable is if they had reproduced the arc flash in a laboratory setting and otherwise empirically eliminated all other possible causes. Dkt. No. 51 at 9–10; Dkt. No. 53 at 10. Eaton further points to the post-manufacture and pre-installation testing of the equipment as countervailing evidence that weighs against Mr. Barovsky's and Mr. Way's conclusions. *Id.*

Eaton overstates the standard applied in the Court's gatekeeping function under Rule 702. It is not the Court's role to determine which of the Parties' respective experts' methodologies is

---

[4] On January 25, 2023, Defendant filed a notice of partial settlement with Mr. Apodaca. In light of this change in circumstance, Eaton has also filed a motion in limine with regard to the exclusion of Mr. Apodaca's expert, Mr. Barvovsky. The Court will address the issue of exclusion due to the partial settlement in its ruling on the motion in limine after full briefing.

[5] In addition to directly asserting this "if/then" argument, Eaton's substantive arguments regarding the reliability of Mr. Way's opinions are essentially the same as some of the substantive arguments raised in its motion to exclude Mr. Barovsky's opinions. *Compare* Dkt. No. 53 at 8–10 *with* Dkt. No. 51 at 9–10.

[6] The Court notes that Mr. Vasudevan's somewhat contradictory opinion appears to be that a complete root-cause analysis cannot be completed because critical evidence was not preserved, yet he nonetheless opines that a defect in the bus plug itself could not be the cause because it is not supported by the evidence that is available. Dkt. No. 72-1 at 22.

best, or even most reliable. The Court must simply be convinced that the methodology each individual expert actually applied has "a reliable basis in the knowledge and experience of the relevant discipline." *Ruvalcaba-Garcia*, 923 F.3d at 1188. Just as the Court finds sufficient indicia of reliability in the record to allow Mr. Vasudevan's opinion testimony despite the presence of potentially countervailing facts, the record here includes sufficient indicia of reliability to allow both Mr. Baraovsky's and Mr. Way's opinion testimony, including their respective qualifications (Dkt. Nos. 52-3 at 19–20, 54-5 at 28–31), reports (Dkt. Nos. 52-1, 52-3, 54-5, 54-6), and deposition testimony (*see* Dkt. Nos. 52-4, 54-7).

The Court disagrees with Defendant's assertion that a "fatal problem" with Mr. Barovsky's opinions (and, therefore, Mr. Way's) is his failure to simulate the arc flash. Dkt. No. 51 at 9; *see also* Dkt. No. 53 at 9–10. That Mr. Barovsky and Mr. Way did not try to recreate a dangerous arc flash does not mean that their testimony is necessarily unreliable or unhelpful under Rule 702. Mr. Barovsky still used his specialized knowledge and experience to assess what he believes is the root cause based on his examination at the site, inspection of relevant evidence such as the subject and exemplar bus plugs, and a review of Eaton's product literature as well as industry literature. Dkt. No. 70 at 5. And while Defendant complains about Mr. Way "[n]ever setting foot in electrical room 9E – or even looking at a photograph of it" (Dkt. No. 53 at 9), Mr. Way used his specialized knowledge and experience to inspect an exemplar bus plug, to review hundreds of pages of discovery documents and deposition transcripts, and to interview witnesses. Dkt. No. 68 at 6. Mr. Barovsky's and Mr. Way's opinions are admissible, and Defendant can challenge what it believes are the shortfalls of those opinions through vigorous cross-examination. *See Daubert*, 509 U.S. at 592, 596.

Eaton argues, but fails to show, that *consistencies* between Mr. Barovsky's two reports, or between Mr. Barovsky's and Mr. Way's reports, somehow undermines their opinions. Eaton

attempts to argue that Mr. Barovsky's opinions are unreliable because Mr. Barovsky fails to explain why his opinions did not change between his initial preliminary inspection report for Cochran and his expert report prepared for Mr. Apodaca. Dkt. No. 51 at 7–8. As an initial matter, the Court recognizes that Mr. Barovsky's initial report for Cochran was not prepared as an expert report for litigation purposes. Nevertheless, Eaton highlights the fact that Mr. Barovsky identified in his earlier report potential additional information that was unavailable at the time that might have informed his causal investigation, yet he still concluded that a defect in the equipment itself was the most likely cause of the incident. *Id.* at 4. Eaton suggests that the missing information renders the earlier report patently unreliable. *Id.* But Eaton also concedes that, in preparing his later expert report, Mr. Barovsky did have access to much of the missing information he previously identified as potentially helpful, in addition to other information developed through discovery. *Id.* at 5. It is unclear how Mr. Barovsky's second expert report could be *less* reliable—even though he reviewed and relied on *more* sources of relevant information in preparing the later report—simply because his conclusions and opinions remained consistent between the two reports.

The Court is also satisfied with the possibility that two similarly qualified experts might independently come to similar conclusions when applying to the same set of facts their respective "knowledge and experience of the relevant discipline." *See Ruvalcaba-Garcia*, 923 F.3d at 1188. Here, both Mr. Barovsky and Mr. Way have relevant qualifications and experience in conducting post-incident investigations involving electrical equipment, they have examined the same physical evidence, and they had access to the same discovery materials. Despite Eaton's attempts to inflate the similarities between the two experts' reports (*see* Dkt. No. 53 at 11 (claiming the reports are "nearly 100% derivative [] and identical")), a cursory review of the respective reports indicates areas where they diverge analytically. For example, Mr. Way's

report indicates that part of his scope-of-work included "arc fault energy" calculations. Dkt. No. 54-4 at 5. Mr. Barovsky's expert engagement does not appear to include such calculations. *See* Dkt. No. 52-3. This conclusion is further bolstered by the fact that Eaton's own expert was able to provide a rebuttal to Mr. Barovsky's expert report but noted that Mr. Way's report "was more on industry standard, warnings, PPE, and Incident Energy Calculations[, which were] outside [his] scope of work." Dkt. No. 72-2 at 8. Further, both Mr. Barovsky and Mr. Way were able to cogently and independently defend their respective reports in separate depositions. *See* Dkt. Nos. 52-4, 54-7.

Thus, the Court rejects Eaton's suggestion the experts' opinions are unreliable simply because Mr. Barovsky's conclusions did not change between his two reports or because the two experts generally agree with each other.

### IV.  CONCLUSION

The arguments raised by the parties go the weight, not the admissibility, of the testimony of the various experts and are typical fodder for vigorous cross-examination. Accordingly, the Court DENIES the Parties' respective motions to exclude. Dkt. Nos. 51, 53, 55–56.

Dated this 31st day of January 2023.

Tana Lin
United States District Judge