UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDGAR GUERRERO APODACA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>EATON CORPORATION,<br><br>　　　　　　　Defendant.<br><br><br>DAVID FITZPATRICK, and RYAN MCDADE,<br><br>　　　　　　　Intervenor-Plaintiffs,<br><br>　v.<br><br>EATON CORPORATION,<br><br>　　　　　　　Intervenor-Defendant | CASE NO. 2:20-cv-01064-TL<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

　　　This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment.[1] Dkt. No. 57. Plaintiffs were injured while working on a construction site when a piece of electrical equipment manufactured by Defendant Eaton Corporation ("Eaton") exploded. Dkt. Nos. 21, 25. Plaintiffs' suits raise manufacturing and design defect claims, as well as a failure to warn claim. *Id.* Defendant raises several affirmative defenses, including contributory fault. Dkt. Nos. 22, 28. Plaintiffs move for summary judgment as to liability on all three of their claims and for dismissal of Eaton's contributory fault defense. Dkt. Nos. 57, 87. Defendant opposes. Dkt.

---

[1] Intervenor Plaintiffs David Fitzpatrick and Ryan McDade initially filed the motion, which was then joined by Plaintiff Edgar Guerrero Apodaca. *See* Dkt Nos. 57, 63. Throughout this Order, the Court will collectively refer to the moving parties as "Plaintiffs" unless otherwise specified.

No. 84. Having reviewed the briefing and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS in part and DENIES in part Plaintiffs' motion for partial summary judgment.

## I.   BACKGROUND

The Parties dispute many factual details and their relevance to this case, but most of the relevant events surrounding the incident in question are uncontested. The undisputed facts as the Court understands them follow.

On December 17, 2019, Plaintiffs were injured in an arc flash explosion emanating from a 200 ampere Pow-R-Way III bus plug manufactured by Eaton. The bus plug is a piece of industrial electrical equipment appropriate for use in commercial buildings. The bus plug has two sides: a "line" side and a "load" side. The buildings "main" electrical line, or busway, is connected to the line side of the bus plug. This allows for "spur" electrical lines to be plugged into the load side of the bus plug to draw electricity from the busway to provide power throughout the building. If the busway is energized and plugged into the bus plug, the line side is considered energized, but the bus plug includes a toggle switch that allows power to the load side to be turned on and off. There is also a piece of non-conductive plastic installed in the bus plug to keep the two sides separated. On every bus plug is a sticker that includes the following "Warning Instructions":

> TURN OFF POWER to busway or remove this plug from busway before working on the LINE side of the switch. TURN OFF SWITCH before installing or replacing fuses, or working on LOAD side. Replace all parts and close cover before turning power ON.

Dkt. No. 57 at 12. When the incident occurred, the busway was energized, and the cover of the bus plug was removed, but the power switch for the load side was in the off position.

At the time, Plaintiffs were all employed by Cochran Inc., the electrical contractor for the construction project where they were all working when the incident occurred. All three Plaintiffs were working in a room on the ninth floor of a new skyrise building being built in downtown Seattle, in which the subject bus plug had previously been installed. Mr. Apodaca appears to have been preparing the equipment to be worked on while Mr. Fitzpatrick and Mr. McDade were preparing wires they intended to connect to the load side of the equipment. It is undisputed that at some point prior to the explosion, Mr. Apodaca vacuumed dust from the subject bus plug, but the precise location and orientation of each Plaintiff within the room at the time of the explosion is in dispute.

After the incident, Cochran engaged Douglas Barovsky, a registered professional engineer who specializes in forensic electrical engineering, to investigate the incident. Eaton also sent a sales engineer to the site to coordinate with Cochran immediately after the incident. Cochran was concerned because several similar bus plugs had been installed in the building and were on order for use in other Cochran projects. Mr. Barovsky conducted a site inspection and examined the damaged equipment as compared to an undamaged exemplar provided by Eaton. Based on this limited analysis, Mr. Barovsky produced a preliminary report concluding that a defect in the equipment was the most likely cause of the arc flash incident.

That said, there is no record of any of the other installed bus plugs at the site exploding. Additionally, the records indicate that the subject bus plug, as well as every other bus plug shipped by Eaton to the worksite, had passed both pre-shipping and on-site pre-installation safety inspection and testing. Eaton's safety protocols include conducting a "hi-pot" test, in which a significantly higher than normal amount of power is passed through the equipment to test for potential overload issues, such as an arc flash explosion.

## II. EVIDENCE RELIED ON

The Court has reviewed the evidence provided by the Parties in support of their summary judgment briefing, including the deposition testimony of each of the Plaintiffs and Eaton's 30(b)(6) representative.[2]

Additionally, each of the Parties have retained expert witnesses for purposes of this litigation whose opinions are relevant to this motion.[3] As causation experts, Mr. Apodaca retained Mr. Barovsky,[4] while Mr. Fitzpatrick and Mr. McDade retained Paul Way, a registered professional engineer who is a National Fire Protection Association Certified Fire and Explosion Investigator and an International Association of Arson Investigation Certified Fire Investigator. Both of Plaintiffs' experts agree that, on a more-probable-than-not basis, a defect in the bus plug caused the arc flash explosion. Mr. Way also provides a rebuttal report to both of Eaton's retained experts. Eaton's experts are (1) R. Vasudevan, a registered professional engineer who conducted a forensic engineering analysis to provide causation opinions; and (2) Brian Erga, an electrical safety expert who opines as to proximate cause and contributory fault. Mr. Vasudevan

---

[2] Eaton filed a surreply asking the Court to disregard evidence submitted by Plaintiffs for the first time on reply. *See* Dkt. No. 91 at 3. Eaton further notes that the new documents in question were received by Intervenor-Plaintiffs through a third-party subpoena on November 7, 2022—after Plaintiffs filed their motion but before Eaton's response deadline—but Plaintiffs did not provide copies to Eaton until November 22, one day *after* its response was due. *Id.* at 3, n.1. Although the Court agrees that it would be inappropriate to consider these documents, the Court's determination on the merits of Plaintiffs' motion would not change even if the new evidence was considered. Additionally, in a separate Order filed concurrently with this Order, the Court denies Plaintiffs' motion for discovery sanctions (Dkt. No. 58). As such, to the extent any of Plaintiffs' arguments for summary judgment rely on the exclusion of evidence as a discovery sanction, those arguments fail.

[3] The Parties filed cross-motions to exclude the opinions of each other's retained experts. *See* Dkt. Nos. 51, 53, 55–56, 61–62. The Court's Order denying all of the motions to exclude is filed concurrently with this Order. Additionally, on January 25, 2023, Eaton filed a notice of partial settlement with Mr. Apodaca. In light of this change in circumstance, Eaton has also filed a motion in limine with regard to the exclusion of Mr. Apodaca's expert, Mr. Barvovsky. The Court will address the issue of exclusion due to the partial settlement in its ruling on the motion in limine after full briefing.

[4] Between investigating the incident for Cochran and preparing his expert witness report for Mr. Apodaca, Mr. Barovsky changed employers. This change in employment does not materially impact the Court's analysis and is thus disregarded for purposes of this motion.

concludes that there is insufficient evidence to determine a root cause for the explosion, but the available evidence weighs against a defect in the bus plug. He concludes that other obvious potential causes not attributable to Eaton cannot be ruled out. He also rebuts Mr. Barovsky's report but notes that the subject matter of Mr. Way's report is outside of his scope of work on rebuttal. All of the retained experts' reports and rebuttals were duly exchanged in discovery and are included in the record. All of the experts were deposed, and the relevant portions of their testimony are also included in the record reviewed by the Court.

Finally, the Court DENIES as moot Eaton's request to strike the copy of Mr. Barovsky's report attached to a declaration filed by counsel for Intervenor-Plaintiffs and the allegedly sham declarations provided by Mr. Barovsky and Mr. Way. *See* Dkt No. 84 at 13–15 (citing Dkt. No. 60 at 242–55, and Dkt. Nos. 69 and 76, respectively). All of the expert reports are properly part of the record on summary judgment and speak for themselves. The Court need not, and does not, rely on the specific introduction of Mr. Barovsky's report to which Eaton takes exception, nor on the alleged "sham" declarations, to reach its conclusions.

### III.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. A genuine triable issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also McSherry v. City of Long Beach*, 584 F.3d 1129,

1135 (9th Cir. 2009) (explaining that this is the inquiry at the summary judgment stage, "[s]tripped to its core"). Additionally, "all justifiable inferences" must be drawn in the non-movant's favor, *id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), "only in the sense that, where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Once the movant has made such a showing, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence"); *accord In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986); *see also Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798, 805 (9th Cir. 2010), *cert. denied*, 563 U.S. 1008, (affirming grant of summary judgment against appellant who had "failed to adduce any evidence or authority to support her claim").

IV.     DISCUSSION

Plaintiffs move for a summary judgment finding that Eaton is strictly liable under the Washington Product Liability Act ("WPLA"), RCW 7.72 *et seq.*, for their injuries due to (1) a manufacturing defect, (2) a design defect, or (3) a failure to provide an adequate warning. Dkt. No. 57 at 15–23. Plaintiffs also seek summary judgment dismissal of Eaton's contributory fault defense. *Id.* at 23.

A.     **Manufacturing or Design Defect Claims**

Under the WPLA, a manufacturer can be held strictly liable to a claimant if the claimant's harm was proximately caused by either "[a] product [that] was not reasonably safe as designed" or "[a] product [that] was not reasonably safe in construction." RCW 7.72.030(1), (2). Plaintiffs claim that a defect in the bus plug, identified by both of their causation experts (*see* Dkt. Nos. 52-3 at 16, 54-5 at 25), caused the arc flash explosion. Dkt. No. 57 at 23. Specifically, Plaintiffs argue that "contact between [] two bolts [on the line side of the bus plug] and the energized conductors was the cause of the subject arc flash." *Id.* They allege that the facts show that "two bolts that were too long, deformed a plastic barrier and allowed for contact with energized conductors[, which] resulted in an arc flash explosion." Dkt. No. 87 at 2. Eaton disputes the characterization of the bus plug hardware as defective, noting that neither of Plaintiffs' experts were able to conclusively determine whether it is a manufacturing or a design defect (*see* Dkt. No. 84 at 18; *see also* Dkt. Nos. 52-3 at 16, 54-5 at 25). But even assuming, without deciding, that a defect was present, the Court finds that a genuine dispute of fact exists as to proximate cause, which precludes summary judgment under either theory of liability.

Plaintiffs' experts believe that the arc flash was *probably* caused by the alleged defect. *See* Dkt. No. 52-3 at 16 (noting that Mr. Barovsky's conclusions are stated on a "more probable than not basis"); Dkt. No. 54-5 at 21 (noting that Mr. Way's conclusions "are based on a

reasonable degree of engineering probability"). On the other hand, Eaton's expert, Mr. Vasudevan, notes that Plaintiffs' hypothesis that the alleged defect caused the arc flash was never verified or validated through testing. Dkt. No. 84 at 9 (citing Dkt. Nos. 72-1, 72-2). Eaton also highlights the fact that the record indicates that the alleged defect was present in the exemplar bus plug, as well as other similar bus plugs installed during the same construction project, but there is no evidence in the record of any other arc flash incidents. *Id.* at 8; *see also* Dkt. No. 52-3 (noting that the "protruding fasteners" were present in the examined exemplar bus plug); Dkt. No. 54-5 at 22 (same). Mr. Vasudevan also identifies several other possible causes besides the alleged defect that were not specifically considered or eliminated by Plaintiffs' experts. *Id.*

At this stage, the Court does not consider the credibility of the respective experts or weigh the competing evidence and must resolve all reasonable inferences in favor of Eaton. *Liberty Lobby*, 477 U.S. at 255. Here, Eaton has produced evidence that would allow a jury to conclude that something other than the alleged defect proximately caused the arc flash. The Court therefore DENIES Plaintiffs' request for summary judgment as to liability on their manufacturing or design defect claims.

**B.      Failure to Warn Claim**

Strict liability may also be imposed on a manufacturer if "the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not . . . reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). A manufacturer fails to meet its duty to warn "if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate

and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate." RCW 7.72.030(1)(b).

Here, it is undisputed that an arc flash explosion emanated from the bus plug and caused Plaintiffs' injuries. Plaintiffs note that there are unambiguous "warning instructions" printed directly on the bus plug by Eaton. Dkt. No. 57 at 12. It is indisputable that those instructions explicitly state that the busway should be deenergized or disconnected from the bus plug before any work is done on the <u>line</u> side of the equipment. *Id.* In contrast, the warning instructions explicitly state that all that is required before working on the <u>load</u> side of the equipment is setting the power switch on the bus plug to off. *Id.* Defendants do not dispute that Plaintiffs followed these instructions and were nonetheless injured when the bus plug exploded. Dkt. No. 84 at 4, 22. Consequently, if Eaton's warning instructions were inadequate as a matter of law, it is clear from the undisputed evidence that regardless of what caused the arc flash, the inadequate warning instructions would be a proximate cause of Plaintiffs' injuries. Thus, Plaintiffs' failure to warn claim turns on (1) whether the provided warning instructions were inadequate in light of the likelihood that an arc flash incident might occur and the seriousness of the potential harms, and (2) whether a more adequate alternate warning could have been provided.

Eaton's own evidence establishes the likelihood of serious injury from an arc flash incident occurring if either side of the bus plug were worked on while the busway was energized. *See* Dkt. No. 60 at 35 (121:1–122:1); *see also* Dkt No. 60 at 126 ("Industry studies have shown 480-volt arc-flash occurrences are some of the most hazardous events to workers due to generation of very high calorie/cm² heat energy, long clearing times, and the ability of a 480-volt arc to sustain itself for as long as 2 seconds."). Nonetheless, Eaton's position is that it is safe to work on the load side if the power switch on the bus plug is in the off position, so long as additional safety precautions are also followed. Dkt. No. 60 at 35 (121:1–122:1). Eaton appears

to acknowledge, though, that its warning instructions do not comport with its stated position, since the instructions clearly distinguish the level of hazard involved in working on the two sides of the bus plug and do not warn of the need to take extra precautions even if the instructions are followed to the letter. *Id.* Eaton's argument that "no warning would have protected" the Plaintiffs to the extent the arc flash was caused by factors outside of Eaton's control (Dkt. No. 84 at 23), is also directly contradicted by its own evidence. Eaton's own expert opinions establish that a warning instruction that comports with industry safety standards—to either always deenergize the busway before working on either side of the bus plug or to treat the entire bus plug as fully energized even after powering down the load side—would have eliminated all potential danger. Dkt. No. 85-9 at 5–6 ("If the bus duct had been de-energized and placed in a 'electrically safe work condition', this incident would not have occurred. . . . If the bus plugs involved with this incidence had to be worked energized, and had [Plaintiffs'] been wearing fully rated FR body protection, [they] would have most likely walked away from this incident unscathed."); *see also* Dkt. No. 60 at 77 (35:12–36:22). Thus, the Court finds that Eaton fails to raise a genuine dispute regarding the inadequacy of its provided warning instructions in the face of the likelihood of serious harm from an arc flash, or the availability of more adequate instructions.

  Defendant correctly notes that "[t]o succeed on a WPLA inadequate warning claim, a plaintiff must demonstrate that they would have both read, and heeded, a different warning if one were given." Dkt. No. 84 at 22 (citing *Baughn v. Honda Motor Co.*, 727 P.2d 655, 662 (Wash. 1986) (en banc)). But it is undisputed that Plaintiffs read and heeded the warning instructions that were provided. Other than stating the legal premise from *Baughn*, Eaton produces no evidence to dispute the inference that Plaintiffs would have heeded alternate warning instructions. Instead, Eaton claims, without any support in the law, that "Plaintiffs must first have complied with standard worker practices in the industry." Dkt. No. 84 at 22. While this

argument may go to contributory fault,[5] the extent to which Plaintiffs might also be culpable for the magnitude of their own injuries does not negate the inadequacy of Eaton's provided instructions or the availability of more adequate instructions. *See Ayers By & Through Smith v. Johnson & Johnson Baby Prod. Co.*, 797 P.2d 527, 532 (Wash. App. 1990) (in a failure to warn claim "the focus is on the product . . . . [and] balancing the likelihood that the product would cause the harm complained of (and the seriousness of that harm must be taken into account [ ]) against the burden on the manufacturer in providing an adequate warning"), *aff'd sub nom. Ayers By & Through Ayers v. Johnson & Johnson Baby Prods. Co., a Subsidiary of Johnson & Johnson Co.*, 818 P.2d 1337 (Wash. 1991). Therefore, Eaton's expectation that Plaintiffs would follow additional industry safety precautions is irrelevant to the failure to warn inquiry. *Id.* Such is the nature of a strict liability claim.

Consequently, the Court GRANTS Plaintiffs summary judgment regarding Eaton's liability under the WPLA for failure to provide adequate warning instructions.

**C.     Contributory Fault Defense**

Plaintiffs' argument regarding contributory fault appears to rest primarily on their experts' conclusions that the arc flash was caused by a defect in the bus plug, thus implying that none of Plaintiffs' actions could have contributed to the incident. Dkt. No. 57 at 23. Since the Court has found that disputes of fact preclude summary judgment as to Plaintiffs' defect claims, Plaintiffs' argument here also fails. Additionally, although Eaton raised it in an attempt to defeat summary judgment on the failure to warn claim, Eaton has produced evidence that raises a dispute of fact regarding whether any of Plaintiffs' actions or inactions—*e.g.*, not following industry safety standards or not utilizing their own professional knowledge and experience to

---

[5] See *infra* § IV.C for the Court's discussion on Plaintiffs' request to dismiss Eaton's contributory fault defense.

assess the potential hazards and take additional precautions—contributed to their damages. *See* Dkt. No. 84 at 22–24.

The Court therefore DENIES Plaintiffs' request to dismiss Eaton's contributory fault defense on summary judgment.

## V.    CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for summary judgment. Dkt. No. 57. The Court GRANTS summary judgment for Plaintiffs regarding Eaton's liability on their failure to warn claim under the WPLA, but DENIES summary judgment on Plaintiffs' remaining claims and on Eaton's contributory fault defense.

Dated this 31st day of January 2023.

Tana Lin
United States District Judge