1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDGAR GUERRERO APODACA,

> Plaintiff,

v.

EATON CORPORATION,

> Defendant.

DAVID FITZPATRICK, and RYAN
MCDADE,

> Intervention Plaintiffs,

v.

EATON CORPORATION,

> Intervention Defendant

CASE NO. 2:20-cv-01064-TL

ORDER DENYING
DEFENDANT'S MOTION FOR
RECONSIDERATION

This matter is before the Court on Defendant Eaton Corporation's ("Eaton") Motion for Reconsideration. Dkt. No. 115. Plaintiffs were injured while working on a construction site when a piece of electrical equipment manufactured by Eaton exploded. Dkt. Nos. 21, 25. Plaintiffs' suits assert manufacturing and design defect claims, as well as a failure to warn claim under the Washington Product Liability Act ("WPLA"). *Id.*; *see also* RCW 7.72 *et seq.* Plaintiffs moved for partial summary judgment on Eaton's liability for their respective claims and for dismissal of Eaton's contributory fault defense. Dkt. Nos. 57, 87. The Court granted Plaintiffs summary judgment as to Eaton's liability for failure to warn but denied summary judgment as to the remaining issues. Dkt. No. 108. Eaton now moves for reconsideration of the Court's Order

granting summary judgment on Intervenor Plaintiffs' failure to warn claims.[1] Dkt. No. 115.

Having considered the relevant record and finding responsive briefing unnecessary, *see*

LCR 7(h)(3), the Court DENIES Eaton's motion for reconsideration.

## I. LEGAL STANDARD

"Motions for reconsideration are disfavored." LCR 7(h)(1). Such motions must be denied

absent a showing of "manifest error in the prior ruling or . . . new facts or legal authority which

could not have been brought to [the Court's] attention earlier with reasonable diligence." *Id.*

Motions for reconsideration should be granted only in "highly unusual circumstances." *Marlyn*

*Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting

*389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). "A motion for

reconsideration 'may not be used to raise arguments or present evidence for the first time when

they could reasonably have been raised earlier in the litigation.'" *Id.* (quoting *Kona Enters., Inc.*

*v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Whether or not to grant reconsideration

is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes &*

*Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

## II. DISCUSSION

Eaton assigns error to the Court's decision on summary judgment. Summary judgment is

appropriate where "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant

---

[1] Plaintiff Edgar Guerrero Apodaca originally joined the summary judgment motion filed by Intervenor Plaintiffs David Fitzpatrick and Ryan McDade. Dkt. No. 87. While the motion was pending, the Court received notice that Eaton and Mr. Apodaca had reached a settlement agreement. Dkt. No. 97. The Parties stipulated to the dismissal of all of Mr. Apodaca's claims (Dkt. No. 110), and an order of dismissal was entered (Dkt. No. 111) after the Court's Order on Plaintiff's Motion for Partial Summary Judgment was entered (Dkt. No. 108). Thus, this Order denying reconsideration is applicable only to the Court's grant of summary judgment as to liability on Intervenor Plaintiffs' failure to warn claims.

1   has made such a showing, "its opponent must do more than simply show that there is some

2   metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

3   *Corp.*, 475 U.S. 574, 586 (1986) (citation omitted); *accord Anderson v. Liberty Lobby, Inc.*, 477

4   U.S. 242, 252 (1986) (specifying that the non-movant "must show more than the mere existence

5   of a scintilla of evidence"); *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

6   The non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts

7   showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)

8   (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

9        On summary judgment, the Court does not make credibility determinations, nor does it

10   weigh the evidence. *Liberty Lobby*, 477 U.S. at 255; *accord Munden v. Stewart Title Guar. Co.*,

11   8 F.4th 1040, 1044 (9th Cir. 2021). As many of Eaton's arguments appear to turn on whether the

12   Court made inappropriate inferences based on the evidence presented on summary judgment (*see*

13   Dkt. No. 115 *passim*), the Court reiterates that the applicable standard on summary judgment

14   requires that "all *justifiable* inferences must be drawn in the non-movant's favor . . . *only* []

15   where the facts specifically averred by the non-moving party contradict facts specifically averred

16   by the movant." Dkt. No. 108 at 6 (emphasis added) (citations and internal quotation marks

17   omitted).

18        Eaton argues that the Court manifestly erred in granting summary judgment on the failure

19   to warn claims by disregarding evidence presented in opposition to summary judgment and

20   drawing inferences that "invert[] the Rule 56 standard." Dkt. No. 115 at 2. Specifically, Eaton

21   assigns error to the Court's rulings (1) that the warning instructions Eaton provided on its

22   equipment were inadequate as a matter of law and (2) that the inadequate instructions were the

23   proximate cause of Plaintiffs' injuries. *Id.* The Court finds no error in its prior rulings on these

24   issues.

1

**A.      Inadequacy of Eaton's Warning Instructions**

2

        The Court ruled that the warning instructions provided by Eaton are inadequate as a

3   matter of law given "the likelihood of serious injury from an arc flash incident occurring if either

4   side of the bus plug were worked on while the busway was energized." Dkt. No. 108 at 9.

5   Contrary to Eaton's claim that the Court disregarded contrary evidence, the Court thoroughly

6   considered the entire record and relied primarily on evidence *provided by Eaton* in opposition to

7   summary judgment in reaching its ruling. *Id.* at 9–10.

8           Eaton first argues that the Court made an erroneous inference regarding the warning

9   instructions—*i.e.*, that the court conflated "sufficient" warnings with "necessary" warnings in

10  concluding that Eaton failed to raise a dispute of fact as to the adequacy of the instructions—but

11  Eaton provides no legal support for its purported distinction. *Id.* at 4. To the contrary, the Court

12  found that the plain text of the warning instructions Eaton provided unambiguously states what is

13  required to safely work on either side of the bus plug; therefore, no inference regarding the

14  meaning of the instructions was necessary. Dkt. No. 108 at 9. Even if the Court's understanding

15  of the explicit language Eaton chose to use for its warning instructions could be considered an

16  inference in favor of Plaintiffs, Eaton failed to provide evidence that contradicts the express

17  language of the instructions themselves, which it must do to require the Court to draw the

18  inference in its favor instead. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)

19  (holding that a non-movant gets the benefit of justifiable inferences "only . . . where the facts

20  specifically averred by [the non-moving] party contradict facts specifically averred by the

21  movant"). In its Order, the Court determined that the warning instructions were inadequate as a

22  matter of law in large part because Eaton's own evidence—such as the opinions of Eaton's

23  safety expert, Brian Erga, and Eaton's 30(b)(6) representative's testimony—was inconsistent

24

1   with the clear language of the warning instructions regarding the safe use of the bus plug.[2] Dkt.

2   No. 108 at 9–10. On reconsideration, Eaton's admission that it chose to provide only the

3   minimum "necessary" safety instructions, as opposed to "sufficient" safety instructions (*see* Dkt.

4   No. 115 at 4), only reinforces the Court's determination about the adequacy of the instructions

5   given the known arc flash hazard.

6          Eaton's second argument misrepresents the Court's Order. The Court did not "disregard"

7   any of the evidence that Mr. Erga provided regarding the "Plaintiffs' extensive training, and

8   background industry safety standards." *See* Dkt. No. 115 at 4–5. Indeed, the Court specified that

9   Mr. Erga's expert reports and deposition testimony were among the evidence it relied on. *See*

10  Dkt. No. 108 at 4–5, 9–10. Based on its review of the entire record, the Court determined that the

11  warning instructions were inadequate as a matter of law. *Id.* at 9–10. Once that determination

12  was made, the Court then concluded that the application of strict liability renders "Eaton's

13  expectation" that Plaintiffs would rely on more than the instructions themselves "irrelevant to the

14  failure to warn inquiry" but found that such evidence was still relevant to Eaton's contributory

15  fault defense.[3] *Id.* No relevant evidence was disregarded in the Court's analysis.

16         The Court also notes that Eaton only cited RCW 7.72.050(1) in its legal standards

17  section—in the "Affirmative Defenses Under the WPLA" subsection discussing comparative

18  fault—and not in the "Authorities and Argument" section of its response brief in opposition to

19  summary judgment (*see* Dkt. No. 84 at 13), and Eaton never cited *O'Connell v. MacNeil Wash*

20  *System Ltd.*, 409 P.3d 1107 (Wash. Ct. App. 2017), before moving for reconsideration. To the

21

22  _____
    [2] The Court recognizes that Eaton disagrees with the Court on this point (*see* Dkt. No. 115 at 4 n.1), but Eaton's disagreement does not meet its burden of showing manifest error.

23  [3] *See supra* n.2 and accompanying text. Further, Defendant acknowledged that there are two theories under which Plaintiff could assert liability under a failure to warn claim: RCW 7.72.030(1)(b) and, *in the alternative*, RCW 7.72.030(3) (which requires an evaluation of reasonable consumer expectations). Having reached the issue under the first theory, the Court did not need to reach the alternate theory.

24

extent Eaton now relies on this statute or the newly cited case to present new legal arguments in support of its opposition to summary judgment (*see* Dkt, No. 115 at 5), the Court rejects the arguments because "[a] motion for reconsideration 'may not be used to raise arguments . . . for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals*, 571 F.3d at 880 (quoting *Kona*, 229 F.3d at 890). In any event, Eaton's argument on reconsideration appears to be that the Court failed to consider its industry custom evidence. Dkt. No. 115 at 5. But RCW 7.72.050(1) and *O'Connell* merely establish that such evidence is *relevant* to a failure to warn claim, 409 P.3d at 1115, and the Court considered Eaton's "industry custom" evidence in reaching its decision. Dkt. No. 108 at 4–5, 9–10. Nothing in the *O'Connell* decision requires the Court to reach a different result.

In *O'Connell*, the issue addressed was whether the defendant had a duty to warn at all because the alleged risk was obvious, where the defendant argued that the plaintiff should have reasonably anticipated the danger. 409 P.3d at 1116. The plaintiff had started a car wash business that utilized a conveyor system manufactured and designed by the defendant. *Id.* at 1109–10. The defendant *never warned* the plaintiff that a car entering the conveyor could potentially accelerate out of the system as designed and injure someone standing nearby, which is what happened to the plaintiff. *Id.* The appellate court reversed summary judgment dismissal of the failure to warn claim, finding that the plaintiff raised a genuine dispute of fact regarding whether the alleged hazard was sufficiently apparent to even invoke the defendant's duty to warn. *Id.* at 1116–17. In doing so, the appellate court implicitly rejected the trial court's conclusion that the plaintiff's evidence failed to establish "that it is[] customary or standard for car wash equipment manufacturers to recommend" the use of bollards or other similar safety precautions. *Id.* at 1112. Here, there is no dispute that Eaton had a duty to warn, as evidenced by the numerous warnings it provided. *See, e.g.*, Dkt. Nos. 115-1 at 2, 85-1 at 3. Unlike in *O'Connell*, which concerned only

1    whether a duty to warn of an allegedly obvious hazard even existed, here the Court was required

2    to determine the adequacy of Eaton' warning *instructions* by considering Eaton's evidence

3    regarding the alleged reasonableness of the instructions against the effectiveness of the

4    instructions *it chose to provide*, "in light of the likelihood that an arc flash incident might occur

5    and the seriousness of the potential harms." Dkt. No. 108 at 9; *see also* RCW 7.72.030(1)(b). The

6    Court did so and concluded that the instructions were inadequate (*see* Dkt. No. 108 at 10) despite

7    "Plaintiffs' extensive training, and background industry safety standards applicable to all

8    licensed electricians" (Dkt. No. 115 at 4–5 (citing Dkt. 85-9 at 4–9 and Dkt. No. 84 at 23)).

9         In its third argument, Eaton contends for the first time that it "provided other warnings

10   with the bus plug which, taken together, appropriately describe the risk of harm associated with

11   the product." Dkt. No. 115 at 5. Eaton argues that the Court erroneously "disregarded" this

12   evidence, despite it being in the record, in finding no dispute of fact as to the adequacy of the

13   warning instructions. *Id.* at 5–6. Again, the Court could disregard this entirely new argument as

14   inappropriate in a motion for reconsideration (*see Marlyn Nutraceuticals*, 571 F.3d at 880), but

15   the Court finds that the "other warnings" Eaton reference only support its conclusion that the

16   *warning instructions* at issue are inadequate.[4] The Court reached its conclusion about the

17   inadequacy of the instructions based on the evidence in the record establishing Eaton's prior

18   awareness of "the likelihood of serious injury from an arc flash incident occurring if either side

19

---

20   [4] Defendant attached to its motion for reconsideration a photograph of the exterior warning label that says, "TURN
     OFF this disconnect before plugging in or removing this bus plug. Do not operate switch with cover open. Turn off

21   this disconnect before opening cover and before testing, removing, or installing fuses. *See instruction on inside of
     cover*." Dkt. No. 115-1 at 2 (emphasis added). It is unclear how Defendant thinks this helps their case as the label

22   specifically instructs the user to consult the warning label at issue. Additionally, the warning in the user manual that
     states, "**HAZARD OF ELECTRICAL SHOCK OR BURN. *TURN THE POWER TO THE BUSWAY OFF***

23   **BEFORE INSTALLING, REMOVING OR WORKING ON THIS EQUIPMENT**," does not distinguish
     between the load and line side (Dkt. No. 85-1 at 3 (bolding in original, italics added)) and appears to reinforce the

24   Court's conclusion that more adequate instructions could have been provided on the equipment itself (*see* Dkt.
     No. 108 at 10).

ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION - 7

1    of the bus plug were worked on while the busway was energized," as required by the WPLA. *See*

2    Dkt. No. 108 at 8–9; *see also* RCW 7.72.030(1)(b) (stating that a manufacturer fails to meet its

3    duty to warn "if, *at the time of manufacture*, the likelihood that the product would cause the

4    claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings *or*

5    *instructions* of the manufacturer inadequate and the manufacturer could have provided the

6    warnings *or instructions* which the claimant alleges would have been adequate" (emphasis

7    added)). Even though it did not reference the additional warnings in its Order, the Court finds

8    that the existence of the warnings regarding how dangerous the product is in general only

9    reinforces its determination of the inadequacy of the specific *instructions* provided by Eaton

10   regarding the safe use of the product.

11           Consequently, Eaton fails to establish that the Court made a manifest error in concluding

12   that, on the facts presented on summary judgment, the warning instructions are inadequate as a

13   matter of law, and therefore Denies Eaton's request for reconsideration on this issue.

14   **B.      Proximate Cause**

15           As to proximate cause, the Court ruled based on its review of the evidence in the record

16   that Eaton failed to dispute the fact that its warning instructions regarding the safe use of the

17   equipment were read and heeded prior to the explosion that caused Plaintiffs' injuries. Dkt.

18   No. 108 at 9. Nothing in Eaton's motion for reconsideration raises a genuine dispute about the

19   status of the equipment at the time of the explosion or that the explosion caused Plaintiffs'

20   injuries. Instead, Eaton seeks to manufacture a manifest error argument by making legal

21   arguments it failed to raise in opposition to summary judgment, based in part on inapplicable

22   legal authority, and again, misrepresenting the Court's ruling and evidentiary review. *See* Dkt.

23   No. 115 at 6–7.

24

1    As an initial matter, Eaton again cites for the first time in its motion for reconsideration

2 new legal authority that it could have argued on summary judgment—a case that addresses the

3 two elements of proximate causation: (1) cause in fact, a.k.a. "but for" causation, and (2) legal

4 causation.[5] *See* Dkt. No. 115 at 3 (citing *Beard v. Mighty Lift, Inc.*, 224 F. Supp. 3d 1131, 1136

5 (W.D. Wash. 2016)). Although Eaton does not directly reference this newly stated standard in its

6 arguments for reconsideration, it does claim—again, for the first time on reconsideration—that

7 "there is *no evidence in the record* showing that Plaintiffs in fact read and heeded Eaton's

8 existing warning label." *Id.* at 6 (emphasis in original). As with all the other new arguments, the

9 Court could simply disregard it as inappropriately raised for the first time on reconsideration. *See*

10 *Marlyn Nutraceuticals*, 571 F.3d at 880.

11    However, this in not only a new argument, but it is also simply incorrect. Plaintiffs point

12 to Mr. Fitzpatrick's deposition testimony in which he states that he believed the equipment was

13 in a safe state because he followed the warning instructions included on the equipment by Eaton.

14 *See* Dkt. No. 87 at 5; *see also* Dkt. No. 88 at 102 (103:2–17). This testimony is further

15 corroborated by Eaton's own expert, who quoted the deposition testimony of another Cochran

16 employee, Jason Axe, stating, "we followed the manufacturer's instructions based off reading

17 them, looking at the interior of the disconnect . . . and following the directions, the warning

18 instructions on there, that we were allowed to work on the load side of that disconnect or bus

19 plug if it was in the 'off' position."[6] Dkt. No. 85-9 at 8. Because the Court rejects Eaton's

20

21 [5] Eaton states the two elements of proximate causation under the WPLA as requiring "'but for' causation and
proximate causation." Dkt. No. 115 at 3. Despite this confusingly circular formulation, the Court understands
22 Eaton's intent to state the formulation as presented in its cited authority.

23 [6] Neither party included excerpts from this portion of Mr. Axe's deposition in support of their respective positions
on summary judgment, but it is clear from Mr. Erga's report that the deposition was considered in forming his
24 opinions and is therefore appropriately part of the factual record before the Court on summary judgment. As noted
below, none of Mr. Erga's opinions refute Plaintiffs' evidence indicating that they read and heeded the warning
instructions.

1   contention that there is no evidence showing that Plaintiffs read and heeded the provided

2   warning instructions, its remaining arguments fail on the merits as well.

3         Apparently relying on its "no evidence in the record" argument, which the Court rejects,

4   Eaton cites a California district court case for the proposition that "the Court appears to have

5   conflated the mere fact that Plaintiffs acted consistently with the warning label with a showing

6   that Plaintiffs in fact read and 'followed' the label, a 'correlation equals causation' inference that

7   is inappropriate against a non-moving party on summary judgment." Dkt. No. 115 at 6 (citing

8   *Viramontes v. Pfizer, Inc.*, No. C15-1754, 2018 WL 3363699, at *10 (E.D. Cal. July 10, 2018),

9   *report and recommendation adopted*, No. C15-1754, 2018 WL 4773531 (E.D. Cal. Sept. 14,

10  2018)). But *Viramontes* is not a WPLA case. Further, the proposition from *Viramontes* on which

11  Eaton relies—that a "correlation equals causation" inference cannot support an adverse inference

12  against a non-moving party on summary judgment—is inapplicable here, because *Viramontes*

13  was specifically applying the standard for causation testimony from a medical expert. *See* 2018

14  WL 3363699, at *10 ("Dr. Fishman's report . . . . describes a correlation between Celebrex use

15  and dermatomyositis, but . . . does not state that there is a reasonable medical probability that

16  Celebrex caused dermatomyositis or Chronic Fatigue Syndrome."). In its Order, the Court

17  accepted Plaintiffs' contention that they read and heeded the instructions provided because it was

18  consistent with the evidence in the record and uncontested by Eaton in its opposition. Dkt.

19  No. 108 at 9.

20        Eaton next argues that the Court's "[manifestly erroneous] inference is unsupported by

21  Washington law applying the WPLA . . . in the context of [Plaintiffs'] motion for summary

22  judgment." Dkt. No. 115 at 6–7. For support, Eaton cites a case decided under the "learned

23  intermediary" doctrine in which the doctor who performed a surgery on the plaintiff essentially

24  admitted that he did not remember reading the warnings provided by the defendant, a medical

device manufacturer, before implanting the medical device in the plaintiff. *See Thomas v. C.R.*

*Bard, Inc.*, No. C19-1464, 2021 WL 5299142, at *3–4 (W.D. Wash. Nov. 15, 2021); *see also*

Dkt. No. 115 at 7. *Thomas* is inapplicable here for three reasons: (1) this is not a "learned

intermediary" case; (2) there is no equivalent admission that Plaintiffs failed to read the provided

warning (the Court, in fact, finds the opposite, as noted above); and (3) that case involved the

court rejecting the defendant's argument that the doctor's admission required an inference in its

favor as to lack of proximate cause because the plaintiff produced evidence that the doctor was

nonetheless aware of the relevant warnings. 2021 WL 5299142, at *3–4. The *Thomas* court

accepted the plaintiff's evidence showing that the doctor's testimony was simply that he could

not say for certain that he read the warnings directly prior to the plaintiff's surgery. *Id.* This last

distinction forecloses Eaton's argument for manifest error in the Court's decision. The plaintiff

in *Thomas*, as the non-moving party, met his burden of producing evidence that directly

contradicted defendant's evidence to show that the warnings were not read or heeded in the first

instance, warranting a favorable inference for the plaintiff about whether a jury could find that a

more adequate warning would have prevented the harm. *See id.* Here, to receive a similar

favorable inference as the non-moving party, Eaton had to produce sufficient evidence to refute

Plaintiffs' assertion that they read and heeded the warning instructions in the first instance. *See*

*Lujan*, 497 U.S. at 888. Eaton produced no such evidence.

    Finally, Eaton again argues that the Court erroneously "disregarded" Mr. Erga's expert

opinions in reaching its proximate cause ruling.[7] Dkt. No. 115 at 7. As noted above, the Court

---

[7] To support this claim, Eaton cites *Baughn v. Honda Motor Co.*, 727 P.2d 655, 665 (Wash. 1986). The Court addressed Eaton's prior reliance on *Baughn* to oppose summary judgment in its Order. Dkt. No. 108 at 10 (concluding that "[o]ther than stating the legal premise from *Baughn* [regarding the WPLA's adequacy analysis], Eaton produces no evidence to dispute the inference that Plaintiffs would have heeded alternate warning instructions"). There, Eaton raised *Baughn* for the proposition that the WPLA requires Plaintiffs to show that "they would have both read, and heeded, a different warning if one were given" to establish that the provided warnings are

1   did not disregard any relevant evidence. Nothing in Mr. Erga's report or testimony contradicts

2   the evidence establishing that Plaintiffs read and heeded the warning instructions in the first

3   instance. At most, Mr. Erga's opinions contradict Mr. Fitzpatrick's belief that following the

4   provided warning instructions would place the equipment in a safe condition for the work

5   Plaintiffs intended to perform.[8] *See* Dkt. No. 65-3 at 4–5 (noting that the only way to render the

6   bus plug in an "electrically safe working condition" would have been to deenergize the busway

7   and, otherwise, Plaintiffs should have worn appropriate safety equipment, which would have

8   prevented Plaintiffs' injuries). In fact, reading Mr. Fitzpatrick's testimony in context with

9   Mr. Erga's opinions only reinforces the Court's conclusion that Plaintiffs' injuries could have

10  been completely avoided had adequate instructions been provided—*i.e.*, that the inadequate

11  instructions were a proximate cause of Plaintiffs' injuries. *See* Dkt. No. 108 at 9–10.

12          Eaton fails to establish that the Court made a manifest error in concluding that, on the

13  facts presented on summary judgment, the inadequate warning instructions provided by Eaton

14  were a proximate cause of Plaintiffs' injuries. The Court therefore DENIES Eaton's request for

15  reconsideration on this issue.

16  

17  inadequate as a matter of law. *Id.* (internal quotation marks and citations omitted); *see also* Dkt. No. 84 at 22. For the first time on reconsideration, Eaton raises *Baughn* to support its proximate cause arguments as well. Dkt.

18  No. 115 at 7. Despite being inappropriately raised (*see Marlyn Nutraceuticals*, 571 F.3d at 880), the Court notes that *Baughn* is easily distinguishable and finds it of no help in assessing proximate cause here. Prior to discussing

19  proximate cause, the *Baughn* court had already determined that the plaintiffs' strict liability claims failed because the evidence showed that they not only failed to read the warnings provided by the manufacturer, but also refused to

20  heed all other warnings they received before the accident that cause their injuries. 727 P.2d at 661 (citing Restatement (Second) of Torts § 402A, comment j (1965)). As to proximate cause, the *Baughn* court emphasized the

21  fact that the plaintiffs were using the product in a way that went directly against the manufacturer's provided warnings (which they never read) despite receiving essentially equivalent warnings from other sources. *Id.* at 665.

22  The court found that cause in fact could not be established because the evidence showed that the accident would have occurred no matter what warnings the manufacturer provided. *Id.* Here the evidence shows that the accident occurred *despite* the undisputed fact that the warning instructions provided by Eaton were followed.

23  [8] As the Court concluded previously, the extent to which Eaton's evidence shows that Plaintiffs could have or should have done more to protect themselves in the situation may still be relevant for Eaton's contributory fault defense, but

24  it does not raise a dispute of fact about whether the inadequate warning instructions were a proximate cause of Plaintiffs' injuries. Dkt. No. 108 at 10–11.

### III.   CONCLUSION

Accordingly, the Court DENIES Defendant's Motion for Reconsideration. Dkt. No. 115.

Dated this 23rd day of February 2023.

Tana Lin
United States District Judge